**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-22302-RAR**

**EDUARDO RODRIGUEZ RODRIGUEZ**,

      Petitioner,

v.

**WARDEN OF KROME NORTH**
**SERVICE PROCESSING CENTER**, *et al*.,

      Respondents.

_____/

## ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** comes before the Court upon Petitioner Eduardo Rodriguez Rodriguez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), [ECF No. 1], filed on April 2, 2026.  Petitioner alleges that he has been unlawfully committed to detention in the Krome North Service Processing Center in Miami, Florida and seeks that the Court order his immediate release, or, in the alternative, that the Court order a bond hearing before an Immigration Judge.  *See* Pet. ¶ 6, Prayer for Relief.  The Court having reviewed the Petition, the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Petition, [ECF No. 1], is **GRANTED IN PART** for the reasons set forth herein.

## BACKGROUND

Petitioner is a native of El Salvador who entered the United States in 2019 at the age of fifteen.  Pet. ¶¶ 13–14.  After crossing the border into Arizona with his mother, Petitioner was issued a Notice to Appear ("NTA") by immigration officials dated November 17, 2019 charging him with inadmissibility under INA § 212(a)(6)(A)(i).  *Id*. at ¶ 14; Resp., [ECF No. 14] at 2.  On

November 18, 2019, CBP released Petitioner on an Order of Release on Recognizance. Resp. at 2. Petitioner and his mother then resided in Virginia. Pet. ¶ 14.

In 2021, ICE filed the 2019 NTA in immigration court in Arlington, Virginia, and Petitioner began appearing for hearings. *Id*. at ¶ 16. Petitioner subsequently applied for asylum and obtained employment authorization, and he worked various jobs from 2021 to 2025. Pet. ¶¶ 17–18. On October 1, 2024, an Immigration Judge granted Petitioner's unopposed motion to dismiss his proceedings. Pet. ¶ 20.

ICE encountered Petitioner on October 6, 2025 following his arrest and detention at the Alexandria City Jail in Alexandria, Virginia. Resp. at 3. On November 6, 2025, Petitioner was transferred into the custody of Enforcement and Removal Operations ("ERO") in Washington, DC. *Id*. He was issued a Warrant for Arrest of Alien and a new NTA charging him with inadmissibility under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). *Id*.

On January 30, 2026, Petitioner was transferred into the custody of ICE ERO Miami. Resp. at 3. Petitioner was first detained at Larkin Behavior Health in Hollywood before being transferred to Krome North Service Processing Center on March 25, 2026, where he is currently detained. Pet. ¶ 22.

On April 2, 2026, Petitioner filed this action requesting that the Court (1) assume jurisdiction over this matter and order that Petitioner should not be transferred outside of the Southern District of Florida during the pendency of the Petition; (2) "[d]eclare that Petitioner's detention is unlawful" and that "Respondents' actions, as set forth herein, violate the INA, APA, and Petitioner's substantive and procedural due process rights"; and (3) "[i]ssue a writ of habeas corpus ordering that Respondents immediately release Petitioner" or alternatively "issue a writ of habeas corpus ordering that Respondents immediately release Petitioner pending a bond hearing

[or] issue a writ of habeas corpus ordering that Respondents release Petitioner unless they provide him a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days." *See* Pet., Prayer for Relief.

On April 7, 2026, the Court issued an Order to Show Cause and Omnibus Order ("Order to Show Cause"), [ECF No. 6], directing Respondents "to show cause why the Petition should not be granted and [to] file all documents and transcripts necessary for resolution of the Petition." *See* Order to Show Cause at 2–3.  On April 23, 2026, Respondents filed a Response to the Court's Order to Show Cause ("Response"), [ECF No. 14].  Petitioner subsequently filed a Reply, [ECF No. 15].  Accordingly, the Petition is fully briefed and ripe for review.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).  Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner maintains that "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are present without having been admitted or paroled" and as such, "he is entitled to a bond hearing by an immigration judge

pursuant to § 1226(a)." Pet. ¶¶ 39–40. He also alleges violations of his substantive and procedural due process rights under the Fifth Amendment arising from his detention. Pet. ¶¶ 46, 50.

In addition to responding to Petitioner's claims, Respondents argue that the Court lacks jurisdiction to consider the Petition pursuant to 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). *See* Resp. at 5–9.

Accordingly, there are three questions before the Court: (1) whether the Court has jurisdiction to review the Petition; (2) whether Petitioner is properly detained pursuant to § 1225(b)(2); and (3) whether Petitioner's mandatory detention is consistent with the Due Process Clause. However, because the Court finds that Petitioner is improperly detained pursuant to § 1225(b)(2), and grants habeas relief on this basis, the Court need not reach the Due Process question.

### I. The Court has jurisdiction to consider the Petition.

Respondents argue that 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) bar Petitioner's claims. *See* Resp. at 5–9. Although jurisdiction stripping provisions such as § 1252(g) and § 1252(b)(9) may preclude judicial review, they are not applicable here. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court has given § 1252(g) a "narrow reading," emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999). And § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States

under this subchapter shall be available only in judicial review of a final order under this section."
8 U.S.C. § 1252(b)(9).

Neither provision is applicable here because Petitioner is merely attacking Respondents' decision to treat him as an *applicant for admission* under § 1225(b). *See, e.g., Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, No. 25-cv-1287, 2026 WL 83980, at *2–3 (M.D. Fla. Jan. 12, 2026) (finding that petitioner's claims are not barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) because petitioner is not attacking "ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal" nor is he "seeking to challenge the decision to seek removal or the process by which removability will be determined"); *Boffill v. Field Off. Dir.*, No. 25-25179, 2025 WL 3246868, at *2–4 (S.D. Fla. Nov. 20, 2025) (same). Accordingly, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-20217, 2026 WL 496726, at *3 (S.D. Fla. Feb. 23, 2026).

**II.    Petitioner is improperly detained pursuant to § 1225(b)(2) and is therefore entitled to a bond hearing.**

Respondents maintain that Petitioner's detention is lawful pursuant to § 1225(b)(2), citing to this Court's decision in *Rocha Vargas v. Miami Federal Detention Center*. Resp. at 11. Indeed, in that case, this Court held that a similarly situated petitioner was detained pursuant to § 1225. *See Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-CV-25966-RAR, 2026 WL 911291, at *1 (S.D. Fla. Apr. 2, 2026). However, this Court decided *Rocha* when only the Fifth and Eighth Circuits had considered the very question presented by the Petition and concluded that aliens like Petitioner are detained pursuant to § 1225(b)(2)(A). *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) (finding that 8 U.S.C. § 1226(a) does not apply to petitioners, given that "[t]he text

Page **5** of **8**

and context of § 1225 contradict the petitioners' reading of the statute."); *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at \*6 (8th Cir. Mar. 25, 2026) ("[T]he district court erred in holding that the Government could not detain [petitioner] without bond under § 1225(b)(2)(A) and in granting habeas relief on that basis."). In *Rocha*, the Court noted that the issue is a "close call" and "[o]nce the Eleventh Circuit speaks on this issue, the Court will be bound by its holding." *Rocha Vargas*, 2026 WL 911291, at \*9.

On May 6, 2026, the Eleventh Circuit released its opinion in *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, rejecting the "Government's re-interpretation of § 1225(b)(2)(A)" and affirming the district court's holding that "the discretionary detention provisions found in § 1226 governed [petitioners'] detention instead, rendering each of them eligible for bond."[1] No. 25-14065, 2026 WL 1243395, at \*1 (11th Cir. May 6, 2026). The Eleventh Circuit held that "[t]he text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing IIRIRA, yield the conclusion that no bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here." *Id*. And it rejected the Government's contention that "Petitioners' mere presence in the interior transforms them into applicants who are 'seeking admission;' since applicants for admission may withdraw their application by simply leaving the country." *Id*. at \*8. The Court also relied on the Supreme Court's opinion in *Jennings v. Rodriguez*, which "observed that § 1226 'generally governs the process of arresting and detaining' aliens 'present in the country,' including aliens 'who were inadmissible at the time of entry or who

---

[1]  The Second Circuit also recently considered this question and likewise determined that aliens like Petitioner are detained pursuant to § 1226. *See Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). A divided Seventh Circuit panel has also opined on this question. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250 (7th Cir. May 5, 2026). Accordingly, this question continues to "appear[] destined for resolution by the Supreme Court." *Rocha Vargas*, 2026 WL 911291, at \*9.

have been convicted of certain criminal offenses since admission." *Id*. at *16 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288–299 (2018)).  Lastly, the Court "review[ed] [] the relevant history of the INA" and determined that "the record evidence available leads us as well to reject the Government's ahistorical reading." *Id*. at *20.

Because "[a] circuit court's decision binds the district courts sitting within its jurisdiction[,]" this Court adopts and is bound by the reasoning articulated in *Hernandez Alvarez*. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004).  Accordingly, the Court finds that § 1226(a) governs Petitioner's detention and that Petitioner is entitled to an individualized bond hearing.

### III.  The Court need not reach Petitioner's due process claim.

Petitioner also argues that his detention violates the Due Process Clause of the Fifth Amendment.  *See* Pet., Request for Relief.  But the Court need not reach the merits of this claim. *See, e.g.*, *Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr*., No. 25-24535, 2025 WL 2938369, at *6 (S.D. Fla. Oct. 15, 2025).  "Should Respondents fail to comply with this Order by providing Petitioner a bond hearing, Petitioner may renew [this] claims." *Id*. (explaining that petitioner's due process claim is not ripe because it is "contingent on Petitioner not receiving a custody determination hearing under 8 U.S.C. section 1226(a)[.]").

### CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Petitioner Eduardo Rodriguez Rodriguez's Petition for Writ of Habeas Corpus, [ECF No. 1], is **GRANTED IN PART**.  Respondents shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner.

2.  All deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

3.  The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 8th day of May, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**